SEYFARTH SHAW LLP
James S. Yu (JY-9734)
Marc J. Gurell (MG-5642)
Robert W. Dremluk (RD-3109)
620 Eighth Avenue
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

Hearing Date: June 22, 2010, 10:00 a.m.
Objection Deadline: June 15, 2010, 5:00 p.m.

*Attorneys for 700 N. Michigan Avenue, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
In re:                                                             :   Chapter 15
                                                                   :
THE TALL GIRL SHOP LTD.,                                           :   Case No. 09-15906 (SMB)
                                                                   :
      Debtor in a Foreign Proceeding.                               :
                                                                   :
------------------------------------------------------------------ x

## NOTICE OF MOTION OF 700 N. MICHIGAN AVENUE
## FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

**TO:** ATTACHED SERVICE LIST

    **PLEASE TAKE NOTICE** that on June 22, 2010, at 10:00 a.m., the undersigned shall appear before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, Courtroom 723 in the United States Bankruptcy Court for the Southern District of New York, at One Bowling Green, New York, New York 10004-1408, at which time the Court shall hold a hearing on **Motion on Behalf of 700 N. Michigan Avenue, LLC for an Order Granting Relief from the Automatic Stay**, a true and correct copy of which is herewith served upon you.

Dated: New York, New York
       June 1, 2010

                             **SEYFARTH SHAW LLP**

                             By:  /s/ James S. Yu
                                James S. YU (JY-9734)
                                Marc J. Gurell (MG-5642)
                                Robert W. Dremluk (RD-3109)
                         620 Eighth Avenue
                       New York, New York 10018-1405
                       (212) 218-5500
                       *Attorneys for 700 N. Michigan Avenue LLC*

12347132v.1

# SERVICE LIST

Timothy A. Barnes, Esq.
Lara Shiek, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061
Counsel to A. Farber & Partners Inc. (as Foreign Representative)

U.S. Trustee
United States Trustee
33 Whitehall Street
21st Floor
New York, New York 10004

**SEYFARTH SHAW LLP**
James S. Yu (JY-9734)
Marc J. Gurell (MG-5642)
Robert W. Dremluk (RD-3109)
620 Eighth Avenue
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

*Attorneys for 700 N. Michigan Avenue, LLC*

Hearing Date: June 22, 2010, 10:00 a.m.
Objection Deadline: June 15, 2010, 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                                   :
In re:                                                             : Chapter 15
                                                                   :
THE TALL GIRL SHOP LTD.,                                           : Case No. 09-15906 (SMB)
                                                                   :
        Debtor in a Foreign Proceeding.                         :
                                                                   :
------------------------------------------------------------------ x

## MOTION ON BEHALF OF 700 N. MICHIGAN AVENUE, LLC
## FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE STUART M. BERNSTEIN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      700 N. Michigan Avenue, LLC ("700" or "Landlord"), by and through its undersigned counsel, hereby moves for entry of an Order pursuant to Section 362(d) of Title 11 of the United States Code, as amended (the "Bankruptcy Code"): (1) granting relief from the automatic stay to the extent necessary to commence a declaratory judgment action in the State of Illinois voiding a certain lease agreement between 700, as assignee landlord, and The Tall Girl Shop Ltd., as tenant ("Debtor" or "Tenant"), pursuant to which A. Farber & Partners, Inc., as Interim Receiver for the Debtor (the "Interim Receiver"), seeks to collect certain lease termination payments in a pending proceeding in Canada, based upon Debtor's failure to satisfy certain conditions precedent to be entitled to receipt of such fees; and (2) granting other relief as may be just and proper (the "Motion").

12339856v.2

In support of the Motion, 700 respectfully refers to the facts presented in and documents annexed to the accompanying Declaration of Zane Zielinski, Esq., dated May 21, 2010 ("Zielinski Decl.") and the AFfidavit of Bradley Borowiec ("Borowiec Aff."), dated May 24, 2010, and further states as follows:

## PROCEDURAL HISTORY

1. On September 4, 2009, Debtor filed in the Superior Court of Justice of the Province of Ontario, District of Toronto (Commercial Division), Case No. 32-1255353 (the "Canadian Receivership Proceeding") pursuant to Canada's Bankruptcy and Insolvency Act, a "Notice of Intention to Make a Proposal In respect of Tall Girl."

2. On September 30, 2009, Debtor filed a petition under Chapter 15 of Title 11 of the Bankruptcy Code commencing with respect to the Debtor in the United States Bankruptcy Court for the Southern District of New York a Chapter 15 case ancillary to a proceeding in Canada and seeking relief in aid of the Canadian Receivership Proceeding.

3. On October 22, 2009, this Court granted recognition of the Canadian Receivership Proceeding.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 362(d) and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

5. Venue of this case and of this Motion is proper in this Judicial District pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (G), and (O).

## STATEMENT OF FACTS

### A. The Lease Agreement.

7. 700 and Debtor were parties to a certain lease agreement, dated August 9, 1994, as subsequently amended (the "Lease"), the most recent amendment being dated February 2009 (the "Fifth Amendment"), pursuant to which 700, as assignee landlord, leased to Debtor certain retail premises within the shopping center known as Chicago Place (the "Shopping Center") in the State of Illinois. (A copy of the Lease and the Fifth Amendment is annexed as Exhibits A and B, respectively, to the Zielinski Decl.)

8. Paragraphs 5.02 and 5.03 of the Lease obligated Debtor to, among other things, "continuously and uninterruptedly occupy, use and operate the entire Premises and be open for business" under its Trade Name throughout the term of the Lease on each day and during certain specified hours.

9. Pursuant to the Fifth Amendment, Debtor agreed to relocate into alternative premises in the Shopping Center on or before March 15, 2009, and did in fact relocate into alternative premises (the "Alternative Premises") before said date.

10. Paragraph 8 of the Fifth Amendment, entitled "Tenant's Right of Termination" provides as follows:

> Commencing on April 1, 2009, the Tenant shall have the irrevocable right to terminate the Lease **upon at least sixty (60) days written notice** to the Landlord (the "Tenant Termination Notice"). Tenant shall vacate the Premises on or before sixty (60) days after serving the Tenant Termination Notice. [emphasis added].

11. Paragraph 9 of the Fifth Amendment, entitled "Tenant's Rights" further provides:

> In the event that the Tenant or the Landlord terminate the Lease as provided for in Paragraphs 3, 7, or 8 of this Amendment, and provided that the Tenant: (i) timely vacates the Premises on or before March 15, 2009; (ii) timely vacates the Alternative Premises

3

(if applicable) on or before sixty days (60) days after receiving the Landlord Termination Notice or serving the Tenant Termination Notice, with time being of the essence as to such date; (iii) pays all the Rent not in dispute, or other charges due to Landlord at the time that the Tenant vacates the Alternative Premises; and (iii) leaves the Premises and the Alternative Premises in broom clean condition, the Tenant shall receive from the Landlord a Termination Payment, as defined in Paragraph 10 of this Amendment.

12. Paragraph 10 of the Fifth Amendment, entitled "Termination Payment" provides:

In the event that the Tenant or the Landlord elect to terminate the Lease . . . and the Tenant complies with Paragraph 9 of this Amendment, the Tenant will be entitled to a payment from the Landlord (the "Termination Payment"). If the Tenant vacates the Premises or the Alternative Premises between March 1, 2009 and August 31, 2009, the Termination Payment will be equal to $135,000.00. Commencing on September 1, 2009 through December 31, 2010, the Termination Payment shall be reduced by $8,000.00 each month. As of January 1, 2011, if the Tenant vacates the Alternative Premises, the Landlord will not be required to make any Termination Payment to the Tenant. As an example, if the Tenant vacates the Alternative Premises between January 1, 2010 and January 31, 2010, the Termination Payment will be equal to $95,000.00

13. Paragraph 21.04 of the Lease provides that the Lease "shall be governed by and construed under the laws of the jurisdiction in which the Building is located," in this case, the State of Illinois.

14. Paragraph 17 of the Fifth Amendment similarly provides that it shall be governed by and construed under the laws of the State of Illinois.

B. **Debtor's Canadian Action Against 700 for the Termination Payment.**

15. On May 17, 2010, the Interim Receiver's Canadian counsel, Strikeman Elliott, submitted an Application under Canadian rules and procedure, to the Ontario Superior Court of Justice, Commercial List (the "Canadian Court"), entitled A. Farber & Partners, Inc. in its

4

capacity as Interim Receiver and Proposal Trustee of The Tall Girl Shop Ltd. v. 700 N. Michigan Avenue LLC, Court File No. CV-10-8722-00CL (the "Canadian Action").

16. An apparent Draft Application Record was previously sent to 700's counsel by letter, dated April 16, 2010 (Zielinski Decl. ¶ 13.)

17. According to the May 18, 2010 cover letter from Strikeman Elliott, the Canadian Court granted the Interim Receiver's request to have the Application issued and scheduled a hearing on the matter to take place on June 4, 2010 at 9:30 a.m. A copy of the Notice of Application and the Application Record is annexed to the Zielinski Aff., respectively, as Exhibits C and F.

18. The Application seeks: (a) a Declaration that 700 is in breach of the Lease; and (b) an Order that 700 pay Debtor the sum of $119,000, representing the amount of the Termination Payment that Debtor alleges is owed by 700 as a result of Debtor's purported termination of the Lease on October 12, 2009.[1]

19. As demonstrated below, the Canadian Action has no basis. In any event, as of May 24, 2010, when a copy of this Motion was submitted to the Court for consideration as to whether the Motion should be heard on an expedited basis, neither the Application nor the Notice of Application had yet been served upon 700. In fact, 700's counsel specifically advised Sarah Clarke of Strikeman Elliott that he was not authorized to accept service on behalf of 700. (Zielinski Decl.¶ 14).

C.  **Debtor's Failure to Timely Provide 60 Days Written Notice of Termination.**

20. 700 first received notice from Debtor of its intent to terminate the Lease on October 9, 2009, when Debtor **verbally** communicated to 700 that it was leaving the Alternative

---

[1] In separate correspondence from Strikeman Elliott, dated December 24, 2009, the Interim Receiver requested payment of the Termination Amount in the sum of $97,200.57. (Zielinski Decl. ¶ 8, Ex. D.)

5

Premises three days later on October 12, 2009. (Borowiec Aff. ¶ 4.) Such three day non-written notice does not comply with the notice provisions of Paragraph 8 of the Fifth Amendment.[2]

21. Indeed, Debtor admits that it attempted to provide only three days notice when it purportedly issued on October 9, 2009 a "Notice to Disclaim," effective October 12, 2009. (See Affidavit of Michael Baigel on behalf of the Interim Receiver, dated April 16, 2010 (the "Baigel Aff."), a copy of which is part of the Application Record, annexed as Exhibit F to the Zielinski Decl.)

22. According to the Baigel Aff. and said Notice to Disclaim, "[t]he Notice to Disclaim was mistakenly sent to Brookfield Retail Centres Inc. ("Brookfield")," the original landlord. (Baigel Aff. ¶¶ 15.) A follow-up letter was allegedly sent to Brookfield on November 4, 2009. (Id. ¶ 16.)

23. As further confirmed by the Baigel Aff., 700 did not receive written notice of termination from Debtor until December 9, 2009, when counsel to Debtor wrote to 700 by letter dated December 8, 2009. Accordingly, pursuant to Paragraph 8 of the Fifth Amendment, the earliest effective termination date is February 8, 2010 (or 60 days from December 8, 2009) (the "Effective Termination Date").

**D.    Debtor's Admitted Defaults.**

24. Debtor also admits that as of October 12, 2009, the date Debtor terminated the Lease, it was in default of its payment obligations. The December 8, 2009 letter from Debtor's counsel to 700 acknowledges that rent arrears for the month of September was due and owing to

---

[2]    The Interim Receiver argues that 700 was on notice of the Chapter 15 bankruptcy Petition. However, such notice does not comply with the Lease notice provisions and indeed is not sufficient to indicate whether Debtor intends to either terminate the Lease or cease operations of the retail space.

6

12339856v.2

700 in the sum of $5,799.43, including Common Area Maintenance ("CAM") and taxes. (Baigel Aff., Ex. F.) This amount is, in any event, incorrect.

25. Furthermore, because the Effective Termination Date is February 8, 2010, Debtor is obligated but has failed to pay Rent, including CAM and taxes, as defined in the Lease, through February 2010 in the total amount of $31,454.11. (Borowiec Aff. ¶ 7.)

26. Debtor is also in default of Paragraphs 5.02 and 5.03 of the Lease. On October 12, 2009, Debtor abandoned the Alternative Premise, returned its keys to 700, and ceased continuous operations. The Alternative Premises has remained unoccupied and has not been subsequently leased to any party since Debtor's departure. (Borowiec Aff. ¶ 8.)

## RELIEF REQUESTED

27. By this Motion, 700 seeks an Order from this Bankruptcy Court for an order: (1) granting relief from the automatic stay to the extent necessary to commence a declaratory judgment action in the State of Illinois voiding the Termination Payment provision of the Lease; and (2) granting other relief as may be just and proper.

28. "Cause" exists for the Court to grant relief from the automatic stay. First, Debtor is not entitled to receipt of the Termination Payment in any amount because, contrary to the express conditions set forth in Paragraphs 8 and 9 that must be satisfied in order for Debtor to receive a Termination Payment, (1) Debtor did not provide 60 days written notice of termination; (2) at the time it abandoned the Alternative Premises, Debtor was in default of its payment obligations under the Lease; and (3) Debtor breached Paragraphs 5 of the Lease by failing to occupy the Alternative Premises through the Effective Termination Date.

7

12339856v.2

## GROUNDS FOR RELIEF

29. Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>
> for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> with respect to a stay of an act against property under subsection (a) of this section, if -
>
> (A) the debtor not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization;
>
> . . . .

30. As described in the legislative history of Section 362 of the Bankruptcy Code, the purpose of the automatic stay is as follows:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment of reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

See In re Albion Dispoal, Inc., 217 B.R. 394, 402 (W.D.N.Y. 1997) (citing H.R. Rep. No .595 95th Congress 2d. Sess. 430-342, reprinted in 1978 U.S. Code Cong. & Admin. News ("U.S.C.C.A.N." 5963, 6296-6298.

31. The Bankruptcy Code does not define "cause," which "is viewed as a broad and flexible concept." In re M.J.&K. Co., 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). Accordingly, the determination of whether sufficient cause exists to grant stay relief must be addressed on a

12339856v.2

case by case basis. Id. at 591. Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142-43 (2d Cir. 1999).

32. The decision to lift the stay is left to the discretion of the bankruptcy court. Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc., 907 F.2d 1280, 1286 (2d Cir. 1990). Courts have wide latitude in crafting relief from the stay. See In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994) (citing Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir. 1992)). The factors considered in determining whether cause exists include: (1) whether there is a likelihood of great prejudice to the debtor's estate; and (2) whether continuation of the stay creates hardship to the non-debtor party that outweighs the hardship to the debtor. Id.

33. The Second Circuit in the Sonnax case adopted 12 factors to consider in determining whether to provide relief form the stay to allow litigation to proceed in another forum. 907 F.2d at 1286. As this Court has recognized in applying its discretion, "not all of the [Sonnax] factors are applicable in every case." In re Lyondell Chem. Co., 402 B.R. 495, 609 n.28 (Bankr. S.D.N.Y. 2009).

34. The relevant Sonnax factors are:

(a) Relief would result in partial or complete resolution of the issues. Allowing 700 to seek declaratory relief regarding Debtor's entitlement to the Termination Payment in Illinois would result in a complete resolution of that issue.

(b) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action. Given that the premises leased to the Debtor is located in the State of Illinois and the Lease is subject to Illinois law, adjudication of whether the Debtor is entitled to the Termination Payment pursuant to the Fifth Amendment is best left to the expertise of the State and Federal Courts of Illinois.

9

(c) <u>Whether litigation in another forum would prejudice the interests of other creditors.</u> Creditors will not be prejudiced by the resolution of Debtor's attempt to collect a payment from 700 to which it is not entitled.

(d) <u>The Interests of judicial economy and the expeditious and economical resolution of litigation.</u> There is no reasonable basis to believe that a single declaratory judgment action in Illinois, construing an Illinois contract and the rights of the parties thereunder, cannot be expeditiously or economically resolved.

(e) <u>Impact of the stay on the parties and the balance of harms.</u> In this case, the weighing of equities strongly favors 700. 700 is not seeking here to lift the automatic stay for the purpose of asserting any monetary claims against the Debtor (although such claims are expressly reserved and not waived). Rather, 700 seeks relief from the automatic stay for the limited purpose of commencing an action to obtain a judicial declaration that Debtor is not entitled to the Termination Payment set forth in the Fifth Amendment.

35. Good cause also exists to provide the relief requested. Paragraph 10 of the Fifth Amendment expressly states that Debtor must comply with certain conditions before it can be entitled to a Termination Payment. Such conditions include, among others, (1) a 60 day written notice of termination, pursuant to Paragraph 8 of the Fifth Amendment; and (2) Debtor pays all the rent not in dispute at the time that the Tenant vacates the Alternative Premises. Neither of these conditions were satisfied by the Debtor.

36. As set forth above, Debtor admits that it only attempted to provide 3 days written notice (which it also admits was sent to the wrong address). Debtor further admits that written notice was not served until December 8, 2009. Debtor also admits that it was in arrears at the time it abandoned the Alternative Premises on October 12, 2009. Calculating amount of rent due and owing through the Effective Termination Date (February 8, 2010), Debtor is actually in

10

arrears in the total amount of $31,454.11. Finally, Debtor abandoned the Alternative Premises and ceased operation of same in breach of Paragraphs 5.02 and 5.03 of the Lease.

37. Debtor will not be prejudiced if the automatic stay were lifted for the limited purpose sought in this Motion. Debtor will still have an opportunity to assert its alleged claims against 700, and they will be heard in the proper forum by a court knowledgeable about Illinois law, without the need or expense of expert testimony, and with an interest in the subject property.

38. On the other hand, if the relief requested herein is not granted, 700, a single asset entity, will be forced to defend against Debtor's claims in a foreign country in which 700 had no contacts and has conducted no business.

39. For each of the foregoing reasons, 700 respectfully requests that the Court grant relief from the automatic stay.

## NOTICE

40. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) the Debtor's counsel; (c) Debtor's Canadian counsel.

## NO PRIOR REQUEST

41. No prior request for the relief requested herein has been made to this Court or to any other court.

## WAIVER OF MEMORANDUM OF LAW

42. In accordance with the local Bankruptcy Court Rule 9013-1(b) for the Southern District of New York, no separate memorandum of law is necessary, as all authorities relied on in support of this Motion are set forth herein.

**WHEREFORE**, 700 respectfully requests that this Court grant the Motion and such other and further relief as is just and proper.

12339856v.2

Dated: New York, New York
June 1, 2010

**SEYFARTH SHAW LLP**

By: /s/ James S. Yu
    James S. YU (JY-9734)
    Marc J. Gurell (MG-5642)
    Robert W. Dremluk (RD-3109)
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

*Attorneys for 700 N. Michigan Avenue LLC*